IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMIE TULLEY CANDLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. _____ |
| | § | |
| URS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT AND JURY DEMAND

Jamie Tulley Candler, Plaintiff, files this Complaint against URS Corporation, Defendant, and would respectfully show the Court the following.

## PARTIES AND PERSONAL JURISDICTION

1. Jamie Tulley Candler, Plaintiff, ("Candler") is a citizen of the United States who resides within the Northern District of Texas.

2. URS Corporation, Defendant, ("URS") is a foreign corporation with its principal office in San Francisco, California.  URS maintains facilities within the Northern District of Texas, Dallas Division.  URS may be served with a summons and all other process in this action by serving its registered agent, CT Corporation Systems, 350 N. St. Paul Street, Ste. 2900, Dallas, Texas 75201.

## SUBJECT MATTER JURISDICTION

3. This Court has original subject matter jurisdiction of the federal claim asserted herein under the whistleblower provision of the Sarbanes Oxley Act, 18 U.S.C. §1514A ("Sarbanes Oxley").  Candler initially filed a complaint with the Occupational Safety and

Health Administration alleging that URS engaged in retaliation against her in violation of Section 806 of Sarbanes Oxley. OSHA dismissed Candler's Complaint on October 20, 2011. Candler then filed a timely notice of appeal requesting a *de novo* hearing before a Department of Labor administrative law judge pursuant to 29 C.F.R. §1980.106. By Decision and Order issued on March 6, 2013, the administrative law judge denied Chandler's administrative complaint. Candler timely filed a Petition for Review of the Decision an Order on March 20, 2013. Candler's Petition for Review is pending. This Complaint asserts an action at law or equity for *de novo* review as authorized by 18 U.S.C. §1514A. Subject matter jurisdiction is established under 28 U.S.C. 1331.

## VENUE

4. Venue of this action in this Court is appropriate under 28 U.S.C. §1391(b) as a substantial part of the underlying events which gave rise to Chandler's claims occurred in this District and Division.

## FACTS

5. URS is a provider of engineering, construction and technical services for public agencies and private sector companies around the world. URS offers a full range of program management; planning, design and engineering; systems engineering and technical assistance; construction and construction management; operations and maintenance; information technology; and decommissioning and closure services. URS provides services for federal, oil and gas, infrastructure, power, and industrial projects and programs.

6. Candler was employed by URS from October 1998 to January 2011 in this District and Division when she was terminated under the pretext of a "reduction in force" ("RIF"). Prior to her termination, Candler was promoted in 1999 to a financial manager position. As a financial manager, Candler was responsible for budgets, forecasting, invoices, reporting revenue, and other accounting-related duties as directed by URS. Candler's duties also included processing revenue-in-excess-of-contract ("REC") forms.

7. URS acquired Lopez Garcia Group ("LGG") in 2009. Shortly after the acquisition Candler began to notice irregularities in submitted REC forms related to past LGG projects, now URS's post-acquisition projects. Generally, by submitting these RECs, URS was accelerating and over-exaggerating its revenue in an attempt to make the entity and business unit appear more profitable.

8. As soon as Candler discovered the REC issue, she notified her immediate supervisor, Emily Taylor, a URS vice-president, who then conveyed the concern upstream URS Regional Manager Dev Rastogi. Rastogi, who had worked for LGG, ordered Candler and Taylor to "push the RECs through." In spite of this demand, Candler and Taylor would only process the RECs that they believed to be accurate. They refused to push through inaccurate contracts or unjustified amounts of revenue.

9. After Candler and Taylor raised the REC issue with Ms. Rastogi and other managers at URS's office, they fell into disfavor with Rastogi. Almost immediately, Rastogi unjustly criticized Candler's job performance without cause. Candler reported a number of suspect RECs and reported each to her supervisors.

10. URS took no corrective action, and the problem persisted. In September 2009, at Rastogi's instigation, Candler was demoted. Candler suffered a significant salary reduction, and her job-responsibilities and duties were also reduced.

11. Through portions of 2009, Candler and Taylor continued to personally observe the extent of the false RECs and exaggerated revenue that had been claimed by URS. Since their URS superiors had refused to take any corrective action previously, Taylor reported the continuing fraud that Candler originally discovered and reported to Taylor through the URS internal fraud hotline. Following that call, URS initiated an internal audit into the accounting practices.

12. Candler received an email from URS auditor Dennis England stating that she needed to be interviewed further in connection with the internal audit. On April 27, 2010, Candler was directed to report to the Dallas office of Jones Day, URS's outside counsel, where she was interviewed by URS's counsel and management. Candler was not represented by counsel or even given that opportunity. The questions had little to do with the accounting practices in question. Instead, Candler was asked a series of questions about Taylor, Candler's relationship with Taylor, Taylor's relationship with Rastogi, and Taylor's job performance. Thereafter, URS terminated Taylor, who then filed a Sarbanes Oxley complaint with the Department of Labor. The Department began an investigation of Taylor's complaint, which by necessity included testimony from Candler as a witness. URS was aware that Taylor intended to seek damages from URS.

13. URS terminated Candler on January 14, 2011, under the pretext of a RIF. Contrary to the stated reason for her termination, the RIF, Candler had recently been evaluated by her immediate supervisor and was ranked higher than any of the employees

in her category in that evaluation. Candler was actually earning less money but producing/billing more revenue for URS than other employees in the same position. Candler was, in fact, terminated in retaliation for reporting on multiple occasions the inaccurate RECs, assisting Taylor in filing an ethics hotline complaint, cooperating with ongoing OSHA investigation initiated by Taylor, and assisting and providing truthful information to the internal audit committee.

14. Candler filed a Sarbanes Oxley whistleblower complaint with OSHA, alleging that unfavorable personnel actions, including her demotion in September 2009 and her ultimate dismissal in January 2011, were in retaliation for activities protected under the whistleblower provisions of Sarbanes-Oxley, 18 U.S.C. § 1514A. Specifically, Candler alleged that she had reported to her superiors and cooperated in the investigation of fraudulent accounting procedures engaged in by URS in reporting revenues in excess of contract (RECs). OSHA dismissed Candler's complaint on October 20, 2011. Candler then filed a timely notice of appeal requesting a *de novo* hearing before a Department of Labor administrative law judge pursuant to 29 C.F.R. §1980.106. By Decision and Order issued on March 6, 2013, the administrative law judge denied Chandler's administrative complaint. Candler timely filed a Petition for Review of the Decision an Order on March 19, 2013. This timely-filed action followed.

## COUNT 1

15. The factual allegations of paragraphs 5 – 14 are incorporated by reference. URS violated the anti-retaliation provisions of Sarbanes Oxley §1514A by wrongfully discharging Candler and discriminating against Candler in the terms or conditions of her employment because of Candler's lawful acts of reporting information concerning URS's

REC accounting practices or otherwise assisting in the investigation initiated by Candler and Taylor regarding URS's REC accounting practices.

16.  Candler engaged in protected activity, (2) URS knew of the protected activity, (3) Candler suffered unfavorable personnel actions, and (4) Candler's protected activity was a contributing factor to the discrimination in the forms of demotion and termination suffered by Candler.  Candler is entitled to recover reinstatement by URS with the same seniority status that the employee would have had, but for URS's discrimination; back pay, with interest; and (c) compensation for special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, emotional distress, and reasonable attorney's fees.

## JURY DEMAND

17.  Candler demands a trial by jury on all contested issues of fact as allowed by Sarbanes Oxley and federal law.

## CONCLUSION

Jamie Tulley Candler, Plaintiff, seeks judgment against URS Corporation for all legal and equitable relief provided by Sarbanes Oxley to which she may be entitled.

Respectfully Submitted,

*/s/ Wes Bearden*
J.W. "Wes" Bearden
Texas Bar No. 24071964
J. W. Bearden & Associates, PLLC
1825 Market Center Blvd., Suite 610
Dallas, Texas 75207
Tel. (817) 261-5297
Fax. (817) 265-4969

        Steve Sumner
        Texas Bar No. 19508500
        Dan McElroy
        Texas Bar No. 13586800
        Sumner, Schick & Pace, LLP
        3811 Turtle Creek Blvd., Suite 600
        Dallas, Texas 75219

        **ATTORNEYS FOR JAMIE TULLEY**
        **CANDLER, PLAINTIFF**