UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMIE TULLEY CANDLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-1306-B |
| | § | |
| URS CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant URS Corporation's Motion to Dismiss and Alternative Requests for Mandamus ("Motion") (doc. 5). The Motion challenges the Court's subject matter jurisdiction under the Sarbanes-Oxley Act's whistleblower provision, 18 U.S.C. § 1514A, and argues in the alternative that the Court should stay the proceedings and issue a Writ of Mandamus directing the Department of Labor to complete its administrative review of Plaintiff Jaime Candler's claim. Because the Court finds that 18 U.S.C. § 1514A(b)(1)(B) requires it to assert subject matter jurisdiction over Candler's claim, Defendant's Motion is hereby **DENIED**.

## I.

## BACKGROUND

*A.     Factual Background*

Plaintiff Jamie Candler ("Candler") is a former employee of Defendant URS Corporation ("URS"). Candler worked for URS, a publically-traded engineering firm, for over ten years in various accounting-related roles.

The dispute that gives rise to this cause of action centers on the events following URS's

acquisition of Lopez Garcia Group ("LGG") in early 2009. Candler alleges that soon after the acquisition of LGG, she began to notice accounting irregularities, which she reported first internally and then externally to an Occupational Safety and Health Administration ("OSHA") investigator. Doc. 1, Compl. ¶¶ 7-9, 11-14. She claims that URS demoted and later terminated her because of these complaints. *Id.* ¶¶ 10, 13. URS counters that Candler's demotion was the result of her work performance dropping off as she was given more work following the LGG acquisition and URS's concomitant expansion. Doc. 5, Def.'s Mot. Dismiss 1-2. According to URS, when business began to suffer during the economic recession in the late 2000s, it was forced eliminate a number of positions, and Candler was simply one of those employees. *Id.* 2.

B.   *Procedural History*

The issues raised in URS's Motion turn on the procedural timeline of the administrative proceedings Candler initiated following her termination. Though the parties are not in full agreement as to the events leading up to this Motion, the timeline itself is undisputed.[1]

URS terminated Candler on January 14, 2011. On May 26, 2011, Candler filed a complaint against URS with the Department of Labor ("DOL") under the Sarbanes-Oxley Act's ("SOX") whistleblower provision, 18 U.S.C. § 1514A. As authorized by the Secretary of Labor, OSHA conducted an investigation and issued a report on October 20, 2011, finding "no reasonable cause to believe [URS] violated SOX . . . ." Doc. 6, Def.'s App. Supp. Mot. Dismiss ("Def.'s App.") 1. On November 19, 2011, Candler filed a timely notice of appeal, objecting to the OSHA findings and

---

[1] Unless indicated otherwise, the following timeline is drawn from the matching dates found in Defendant's Motion (doc. 5), Defendant's Appendix in Support of its Motion (doc. 6), Plaintiff's Response (doc. 15), and Plaintiff's Appendix in Support of the Response (doc. 16).

requesting a hearing before an Administrative Law Judge ("ALJ"). A two day hearing was held before the ALJ on July 26-27, 2012. On March 6, 2013, the ALJ issued a Decision and Order denying Candler's complaint. Candler filed a timely petition for review of the ALJ decision with the Administrative Review Board ("ARB") on March 20, 2013, which the ARB accepted on March 26, 2013.

On March 29, 2013, Candler filed her Complaint with the Court (doc. 1), seeking *de novo* review of her SOX whistleblower claim under 18 U.S.C. § 1514A(b)(1)(B). With the administrative proceedings pending,[2] URS filed this Motion on June 21, 2013 (doc. 5). In its Motion, URS contends that the Court must dismiss Candler's Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, because Candler's claim cannot be entertained under SOX's jurisdiction-granting provision. URS argues in the alternative that if subject matter jurisdiction does exist, the Court should draw on its inherent powers to stay the proceedings and issue a Writ of Mandamus directing the ARB to complete its review.

## II.

## LEGAL STANDARD

A court must evaluate the basis for its jurisdiction when a party moves for dismissal under Federal Rule of Civil Procedure 12(b)(1). When a party mounts a "factual attack" under Rule 12(b)(1) by submitting supporting evidentiary materials, he "challenges the existence of subject

---

[2] In accordance with DOL regulations, Candler filed a Notice of Election to Seek Trial *De Novo* in Federal District Court with the ARB on April 5, 2013. On July 3, 2013, while this Motion was still pending, the ARB responded to Candler's Notice by dismissing her administrative complaint. As URS correctly notes in its Reply Brief in Support of this Motion (doc. 17), the ARB's Order on July 3, 2013 made no findings and has no effect on the issue of whether this Court can and should exercise subject matter jurisdiction over this case.

matter jurisdiction in fact . . . and matters outside the pleadings . . . are considered." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Once a factual challenge is raised under Rule 12(b)(1), a claim may be dismissed "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). In reaching its decision, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 223 (5th Cir. 2012) (quotation marks and citations omitted). The burden of persuasion rests with the party seeking relief in federal court. *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012).

### III.

### ANALYSIS

Candler's cause of action arises under SOX's whistleblower provision, 18 U.S.C. § 1514A. This provision "creates a private cause of action for employees of publicly-traded companies who are retaliated against for engaging in certain protected activity," such as reporting federal securities law and related violations. *Allen v. Admin. Review Bd.*, 514 F.3d 468, 475 (5th Cir. 2008). As mentioned, URS is challenging Candler's ability to bring her SOX whistleblower claim in federal court. To resolve this dispute, the Court must examine SOX's jurisdiction-granting provision, 18 U.S.C. § 1514A(b)(1).

A.    *SOX's Jurisdictional Provision: 18 U.S.C. § 1514A(b)(1)*

In evaluating its subject matter jurisdiction under SOX, the Court starts, as it must, with the plain language of the statute. *Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 175 (5th Cir. 2011). The

Court's jurisdiction over Candler's claim depends on subsection (b)(1) of SOX's whistleblower provision, which provides that an aggrieved party may seek relief by:

> (A) filing a complaint with the Secretary of Labor; or
> (B) **if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant**, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

18 U.S.C. § 1514A(b)(1) (emphasis added).

An examination of § 1514A(b)(1)(B)'s plain language reveals that a federal court can assert jurisdiction under SOX only "if" two pre-conditions are met. First, "the Secretary [must not have] issued a final decision within 180 days of the filing of the [administrative] complaint." Second, if the Secretary has delayed more than 180 days in issuing a "final" decision, there must be "no showing that such delay is due to the bad faith of the claimant."

Here, it is undisputed that § 1514A(b)(1)(B)'s first jurisdictional pre-condition has been met. By the time Candler filed her Complaint with this Court–March 29, 2013–more than 180 days had passed since the date her administrative complaint was filed–May 26, 2011. In addition, at the time Chandler filed her Complaint, the Secretary had still not issued a "final" decision, because her claim remained pending in the DOL review process.

The first jurisdictional pre-condition aside, URS presents two alternative reasons for why the Court does not have jurisdiction in this case. First, URS argues that Candler purportedly waived her right to review in federal court during the administrative process. Second, URS maintains that Candler's alleged bad faith delay disqualifies her from federal review under § 1514A(b)(1)'s second jurisdictional pre-condition. Finally, URS argues that if the Court finds SOX provides subject matter

jurisdiction over Candler's claim, it should depart from the plain language of the statute by finding that a literal interpretation of its terms would lead to an absurd result.

  B.  *Waiver*

URS contends that dismissal is warranted because Candler waived her right to *de novo* review in federal court through certain actions she took during the administrative proceedings. Specifically, URS argues that "Candler represented to [the ALJ] and to URS that she was choosing to forego" her right to *de novo* review in federal court in order to pursue her claim in front of the ALJ. Def.'s Mot. 5. URS offers no legal support for its argument. Nor can the Court find any. There is no "waiver" provision found in § 1514A, and the Court has not found any caselaw addressing this unwritten provision. Even assuming legal support existed, URS provides the Court with no evidentiary support, no declaration by Candler, not a single notation on the 130-page administrative record provided by URS. *See* Def.'s App. 1-130. Accordingly, the Court finds no merit in URS's assertion that Candler waived her right to *de novo* review in federal court.

  C.  *Bad Faith Delay*

Next, URS argues that dismissal is warranted because of Candler's bad faith delay, which by the terms of § 1514A(b)(1)(B), prohibits this Court from exercising subject matter jurisdiction over her claim. As discussed before, the second jurisdictional pre-condition of § 1514A(b)(1)(B) requires that if the Secretary has delayed more than 180 days in issuing a "final" decision, there must be "no showing that such delay is due to the bad faith of the claimant." 18 U.S.C. § 1514A(b)(1)(B). In examining whether the Secretary's delay was "due to" Candler's alleged bad faith, it is helpful to consider the DOL regulations setting out the administrative review process, which the Court defers to only to the extent that they are consistent with the terms of the statute. *See Stone v.*

*Instrumentation Lab. Co.*, 591 F.3d 239, 244 (4th Cir. 2009) ("To the extent that [the DOL] regulations fill in procedural gaps left by [SOX's whistleblower provision] and do not conflict with statutory language, we afford them deference."); *see also Texas Office of Pub. Util. Counsel v. F.C.C.*, 183 F.3d 393, 409 (5th Cir. 1999) ("[W]e reverse an agency's interpretation if it does not conform to the plain meaning of the statute . . . we will sustain an agency interpretation of an ambiguous statute if the interpretation is based on a permissible construction of the statute.").

According to DOL regulations, the first step in the administrative process is the claimant files a complaint with OSHA, which she must do within 180 days of the alleged retaliation. 29 C.F.R. § 1980.103. After OSHA issues its findings and/or preliminary order, a party must object within 30 days of receipt; otherwise, OSHA's findings and/or preliminary order will be deemed the "final" decision of the Secretary. 29 C.F.R. § 1980.106. If a timely objection is made, the second level of administrative review is a hearing before an ALJ. 29 C.F.R. § 1980.107. After the hearing, the ALJ issues his findings and order, which become the "final" decision of the Secretary if an appeal is not filed within 10 business days. 29 C.F.R. § 1980.110. A timely appeal may lead to the third and final level of review before the ARB, which has the authority to issue a "final" decision on the Secretary's behalf. *Id.*

URS does not dispute that Candler complied with all DOL regulations, filing timely objections and appeals[3] as she proceeded through two levels of administrative review. Nonetheless,

---

[3] URS notes that Candler filed "an arguably untimely notice of appeal" objecting to OSHA's preliminary findings. Def.'s Mot. 3. Nonetheless, URS raised this issue with the ALJ, who denied URS's motion for summary decision based on Candler's alleged untimely filing and service of objections to the OSHA findings. Def.'s App. 104. Since URS does not re-raise this issue here, the Court is left to conclude that Candler complied with all deadlines to object and appeal during the administrative process.

URS cites to a number of instances in which it contends that Candler engaged in bad faith delay during the administrative process to slow the resolution of her claim and pressure URS into settling. *See* Def.'s Mot. Dismiss 6-7. It argues that these bad faith allegations taken together show that Candler is "clearly not trying to obtain a fast resolution of her claim–which is the very purpose" of *de novo* review under SOX. *Id.* 7. However, regardless of its statutory purpose,[4] the plain language of § 1514A(b)(1)(B) does not support URS's contention that dismissal is warranted in these circumstances.

The plain language of § 1514A(b)(1)(B)'s second jurisdictional pre-condition requires that the Secretary's delay in issuing a final decision 180 days after the administrative complaint is filed ("such delay") must not be "due to" the claimant's bad faith. 18 U.S.C. § 1514A(b)(1)(B). Here, 673 days passed between the date Candler filed her administrative complaint (May 26, 2011) and the time Candler filed her Complaint with the Court (March 29, 2013). And yet, a final decision had still not been rendered. The Courts finds no reasonable basis to conclude that the Secretary's delay in issuing a final decision within 180 days–by November 22, 2011–was "due to" Candler's bad faith. In fact, nearly all of Candler's purported bad faith delay tactics occurred well after the Secretary's 180-day-window closed. Moreover, the single bad faith allegation URS raises that falls within the Secretary's 180-day-window–that Candler "waited until the last day" of the 30-day window she had to appeal OSHA's findings[5]–does not in and of itself constitute bad faith. *See Murray v. TXU Corp.*,

---

[4] URS's argument in this regard overlaps with its contention, discussed *infra.*, that a literal interpretation of the statute would lead to an absurd result. The Court addresses URS's position on the statute's purpose more fully in discussing the absurdity or unintended consequences doctrine of statutory construction next.

[5] Def.'s Mot. 6.

279 F. Supp. 2d 799, 804 (N.D. Tex. 2003) ("[N]ot holding the Secretary's feet to the irons might well delay a final decision. It is also plain that such failures or omissions do not by themselves indicate bad faith."). In short, even if the Court were to find that Candler engaged in bad faith delay,[6] it would still have no reasonable basis to conclude that the Secretary's 180-day delay in issuing a final decision was "due to" Candler's bad faith.

In sum, for the foregoing reasons, URS has failed to persuade the Court that it lacks subject matter jurisdiction due to Candler's alleged waiver or bad faith delay. Therefore, the Court concludes it has jurisdiction under 18 U.S.C. § 1514A(b)(1) to hear Candler's claim.

*D.     Absurd Results of SOX's Plain Language*

URS argues in the alternative that the Court should not apply the plain language of the statute, "because literal application of Section 1514A(b)(1)(B) to this case would produce an absurd result unintended by Congress." Def.'s Mot. 8. In other words, URS requests that the Court depart from the plain language of SOX–which would otherwise grant the Court jurisdiction–under the common mandate of statutory construction: to avoid absurd or intended results. Doing so, according to URS, would avoid the absurd result of reviewing Candler's claim *de novo* after she already completed two levels of administrative review and could simply see the matter to its end by appearing in front of the ARB. Thus, URS urges the Court to exercise its equitable powers to stay the case and issue a Writ of Mandamus directing the ARB to finish its review by a specified date.

---

[6] To show Candler acted in bad faith, URS points to Candler's ALJ hearing being continued twice either because of Candler or without her objection; her extensive post-trial briefing, with the ALJ denying her requests; and the fact that she waited until the last day to file a petition for review with the ARB. Def.'s Mot. 6-7. It is undisputed, however, that Candler complied with all administrative deadlines. It would be difficult to fault Candler for taking full advantage of the rights she is afforded by DOL regulations.

...
...
...

Candler counters that she has complied with the plain language of the statute, and therefore has the statutory right to *de novo* review in federal court. Pl.'s Rep. 8. According to Candler, the Court cannot simply ignore SOX's plain language to avoid duplicative proceedings. *Id.* For the reasons that follow, the Court finds Candler's position the more persuasive.

Courts must "follow the literal, plain language of a statute unless doing so would lead to an absurd result." *United States v. Ret. Serv. Grp.*, 302 F.3d 425, 435 (5th Cir. 2002). An absurd result is one that is "so bizarre that Congress could not have intended it." *Johnson v. Sawyer*, 120 F.3d 1307, 1319 (5th Cir. 1997) (quotation marks omitted). For example, the Firth Circuit departed from the plan language of a statute authorizing the government "to bring an action . . . to recover any assets or income used by any person," because it would be "an absurd result if the statute permitted a person with no connection whatsoever" to the matter addressed in the statute to fall within the definition of "any person." *Ret. Serv. Grp.*, 302 F.3d at 436.

The Fifth Circuit, nonetheless, has cautioned that courts must distinguish between "a result that is actually 'absurd'" and one that "is simply personally disagreeable." *Sawyer*, 120 F.3d at 1319. To draw this distinction, courts generally examine "other provisions of the statute and legislative history." *Id.* As the Supreme Court explained: "'Laws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts.'" *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)).

Though the Fifth Circuit has not addressed the doctrine as it relates to 18 U.S.C. § 1514A(b)(1)(B), a number of other courts have confronted the issue. In *Allen v. Stewart Enterprises,*

*Inc.*, the district court declined to apply SOX's plain language, reasoning that "to interpret [§ 1514A(b)(1)(B)] to mandate a *res novo* adjudication after such extensive litigation . . . would lead to an absurd result." No. 05-cv-4033, at *7 (E.D. La. Apr. 6, 2006) (unpublished). But *Allen* is the only case known to reach this conclusion. All other cases addressing this same issue have found that § 1514A(b)(1)(B)'s plain language governs.[7] In fact, the single Court of Appeals decision to confront the issue found that the absurd or unintended results rule of statutory construction did not apply. *See Stone*, 591 F.3d at 250 ("A literal interpretation of the statute's plain language does not lead to an absurd result since Congress unquestionably has the right to create a complainant-friendly scheme that affords no deference to non-final agency findings."). This Court agrees with the majority of courts on this issue.

Allowing Candler to exercise her statutory right to *de novo* review in federal court after completing two levels of administrative review is not– based on the bulk of case authority–the sort of result that is "so bizarre that Congress could not have intended it." *Johnson*, 120 F.3d at 1319. Indeed, a review of the statute's surrounding provisions suggests that Congress reasonably could have contemplated this very outcome in some instances.

First, SOX does not indicate a court should dismiss a complaint in order to prevent a

---

[7] *See, e.g.*, *Lawson v. FMR LLC*, 724 F.Supp.2d 141, 151 (D.Mass. 2010) (finding that "it would not be absurd to permit [the plaintiff] to proceed with his federal claim" even though his administrative claim proceeded all the way to the ARB); *Wong v. CKK, Inc.*, 890 F. Supp. 2d 411, 419 (S.D.N.Y. 2012) (rejecting defendant's argument "that de novo review should apply when the case is so far along in the" administrative process, noting it is "contrary to the plain language of [SOX] and has been correctly rejected by several courts."); *Murray v. TXU Corp.*, 279 F.Supp. 2d 799, 805 (N.D. Tex. 2003) (denying defendant's request to stay plaintiff's claim and allow DOL to finish proceedings); *Hanna v. WCI Communities, Inc.*, 348 F. Supp.2d 1322, 1329-1330 (finding that applying § 1514A(b)(1)(B)'s plain language would not produce an absurd result); *Stone v. Duke Energy Corp.*, No. 03-cv-256, 2004 WL 1834597 (W.D.N.C. June 10, 2004) (granting plaintiff's motion to stay ALJ proceedings and allow de novo review in federal court).

claimant from obtaining–in the words of URS–"a second bite at the apple." Def.'s Mot. 9. It would be unreasonable to conclude that Congress was unaware of the possibility that claimants might proceed through two layers of review before coming to federal court; after all, the "Procedure"[8] Congress provided to govern administrative review under SOX includes "a hearing on the record" to review the Secretary's preliminary findings. 49 U.S.C. § 42121(b)(2)(A). Nevertheless, SOX mandates that a court "shall have jurisdiction" when a claimant properly exercises her right to review in federal court. 18 U.S.C. § 1514A(b)(1). Despite the possibility of a claimant proceeding as far as Candler before filing in federal court, Congress set no limitations on the claimant's right to review once the two explicit jurisdictional pre-conditions were met.

Second, the Court cannot deny Candler her statutory right simply to avoid duplicative proceedings. SOX requires claimants pursue their claims at the administrative level for at least 180 days. Congress had to have been aware that parties and administrative officials will often incur a good deal of expense and effort in that time. But instead of establishing a form of judicial review that gives deference to what the DOL accomplishes after 180 days, SOX provides for "de novo review," which "by definition, . . . entails consideration of an issue as if it had not been decided previously." *Stone*, 591 F.3d at 245 (quotation marks and brackets omitted). Accordingly, the Court must reject URS's contention that it would be absurd to review Candler's claim anew in this forum.

Finally, however sound a policy argument URS offers regarding avoiding duplicative proceedings, the Court cannot depart from the statute's plain language when it is presented with a result that is "personally disagreeable" rather than one "that is actually 'absurd.'" *Sawyer*, 120 F.3d

---

[8] 18 U.S.C. § 1514A(b)(2) ("An action under [§ 1514A(b)(1)(A)] shall be governed under the rules and procedures set forth in section 42121(b) of title 49, United States Code.").

at 1319. Despite the efficiencies gained by granting URS's request, to do that would be to deny Candler her statutory right to *de novo* review in federal court. As the Supreme Court has noted: "The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this Court. Congress may amend the statute; we may not." *Griffin*, 458 U.S. at 576.

## IV.

## CONCLUSION

For the reasons state above, the Court **DENIES** Defendant URS Corporation's Motion to Dismiss and Alternative Requests for Mandamus (doc. 5), finding that it does have subject matter jurisdiction over Plaintiff Jamie Candler's claim brought under SOX, 18 U.S.C. § 1514A and, otherwise, that URS's request for mandamus relief is not warranted under the circumstances.

**SO ORDERED**

**SIGNED: September 25, 2013**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT